## McClain v. McClain, et al.

(Decided December 20, 1912.)

### Appeal from Montgomery Circuit Court.

1. Lunatics—Real Estate—Sale of—Order of Court—Conversion.— Where the real estate of a lunatic is sold by order of court for the purpose of paying his debts, the surplus of the proceeds remains realty, and his subsequent restoration to sanity and his appearance in the action and request that the proceeds be turned over to him are not sufficient to convert into personalty the proceeds of the last sale bond, which were never turned over to him, and which were not collected until after he was again adjudged insane.

2. Dower—Husband's Real Estate—Mortgage Lien in Which Wife Joins—Sale of Land to Discharge Liens—Surplus—Realty—Kentucky Statutes, Section 2135.—Where the real estate of the husband is sold to satisfy an incumbrance created by deed or mortgage in which the wife unites, the surplus of the proceeds whether the husband be sane or insane, is to be treated as realty under section 2135, Kentucky Statutes, and the wife is not entitled to one-half thereof as in the case of personal property, but only to dower therein, unless such surplus be received or disposed of by the husband during his lifetime.

JOHN A. JUDY for appellant.

LEWIS APPERSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John McClain was the owner of a farm in Montgomery County, Kentucky. On December 10, 1908, he was adjudged insane by the Montgomery County Court, and J. Will Clay was appointed his committee. Prior to the time that he was adjudged insane, he had executed and delivered three mortgages on his farm; one for $5,000 to

the Northwestern Mutual Life Insurance Company, one for $1,500 to H. Clay Turner, and one for $500 to the Exchange Bank of Kentucky. His wife, Mamie L. McClain, united in these mortgages.

On December 28, 1908, J. Will Clay, as committee for John McClain, brought this action against John McClain and the wife and creditors of John McClain for the purpose of selling the farm in question, in order to pay the debts of John McClain and to provide for the maintenance and support of his wife and children. The petition alleged and the proof showed that the land could not be divided without materially impairing its value. The case was referred to the master commissioner of the Montgomery Circuit Court, and after proper steps had been taken before him, the land was ordered sold as a whole, and so much of the proceeds as was necessary was applied to the payment of John McClain's debts. To this action Mamie L. McClain, the wife, filed answer relinquishing her potential right of dower, and asking that the funds remaining after the payment of the debts of John McClain be invested for the support of herself and the infant children of John McClain.

On February 12, 1910, John McClain was adjudged of sound mind. At the April term, 1910, of the Montgomery Circuit Court, John McClain appeared and filed in this action his petition and answer, setting forth the fact that he had been adjudged of sound mind, and asking that the balance of the proceeds of his property be turned over to him. Thereupon, the court entered an order directing the funds in the hands of the committee to be turned over to John McClain. This was done. At that time the last bond executed for the purchase of the farm was not due, and McClain never collected any of its proceeds.

On September 15, 1910, John McClain was again adjudged insane by the Montgomery Circuit Court, and M. C. Clay was appointed his committee. Thereupon, M. C. Clay qualified and filed his petition in this action asking to be made a party. An order was entered making him a party, and he then proceeded under the order of the court to collect the last sale bond due on the farm in question.

John McClain died in November, 1911, and J. Will Clay qualified as his administrator. Thereupon, J. Will Clay, as such administrator, filed his petition and answer in this action, setting out the fact that there were

no assets belonging to John McClain except the funds in the hands of his committee, and asking that the court disburse the sum to the widow and children of John McClain, according to their respective rights. The chancellor adjudged that the widow, Mamie L. McClain, was entitled to one-third of the proceeds for life, and this sum he ordered invested in real estate for the use and benefit of the widow for and during her natural life, with remainder to the five children of John McClain. The balance of the proceeds he ordered divided equally between the children. From that judgment the widow, Mamie L. McClain, prosecutes this appeal.

The sole question to be determined is whether or not the proceeds of the last sale bond should be treated as realty or personalty. If the former, Mamie L. McClain, is entitled to one-third thereof for life, as provided in the judgment of the chancellor. If the latter, she is entitled to one-half thereof absolutely.

Where real estate of a lunatic is sold by his committee under the statute or by order of court, the better doctrine is that the proceeds of such sale remain realty for the purpose of distribution upon the death of the lunatic. 9 Cyc., 848; Holmes' Appeal, 53 Pa. St., 339; Lloyd v. Hart, 2 Pa. St., 473, 45 Am. Dec., 612; In re Tugwel, 27 Ch. D., 309; In re Barker, 17 Ch. D., 241. Counsel for appellant insist that the above rule should not apply in this case, for the reason that after the sale was ordered by the chancellor, John McClain was adjudged of sound mind, and filed an answer asking that the proceeds of the sale be turned over to him. In this way it is insisted that he ratified and approved the sale, and virtually consented to the conversion of the realty into personalty. While this may be true as to the funds which were actually turned over to him, we do not think it is true as to the proceeds of the last sale bond, which were not turned over to him, and over which he never had any control. The sale was made while John McClain was incompetent. It was made without his consent. It was valid, whether he assented to it or not. The sale being valid, he was in a position where he could only lay claim to the proceeds. He remained sane but a short time. The last sale bond not being due, and no order having been made giving him control over it, it remained in the hands of the court, and it was impossible for him to dispose of it or invest it in a way that would determine its character. His mere act in asking that the

proceeds be turned over to him was not sufficient to convert the proceeds from realty into personalty. We are led to this conclusion not only for the reasons given, but for the reason that we have in force in this State the following statute:

"The wife shall not be endowed of land sold, but not conveyed by the husband before marriage, nor of land sold, in good faith, after marriage, to satisfy a lien or encumbrance created before marriage, or created by deed in which she joined, or to satisfy a lien for the purchase money; but if there is a surplus of the land or proceeds of sale after satisfying the lien, she may have dower out of such surplus of the land or compensation out of such surplus of the proceeds, unless they were received or disposed of by the husband in his lifetime."

It will be observed that the statute provides that the wife shall not be endowed of land sold to satisfy a lien or encumbrance created before marriage, or created by deed in which she joins.

In interpreting this statute it has been held that the wife was not entitled to dower in the land sold to satisfy a lien created by mortgage in which she joined, the mortgage being a "deed" within the meaning of the statute. Schweitzer v. Wagner, 94 Ky., 458. In this case, the land was sold to satisfy three mortgages in which the wife joined. The statute, however, provides that if there is a surplus of land or proceeds of sale, after satisfying the lien, she may have dower out of the surplus of the land or compensation out of such surplus of proceeds, unless they were received and disposed of by the husband in his lifetime. Here the land was sold to discharge the mortgages in which the wife had united. Under this statute, whether John McClain was sane or insane, she is entitled to dower out of the surplus of such proceeds as were not received or disposed of by him in his lifetime. As the proceeds of the last sale bond were not received or disposed of by him in his lifetime, it follows that the statute applies, and that Mamie L. McClain, the widow of John McClain, is entitled only to dower in such proceeds. By giving the widow dower out of the surplus of such proceeds, it is plain that the Legislature intended that the surplus of such proceeds should retain the character of realty. That being true, she is not entitled to one-half thereof absolutely as in the case of personalty.

Judgment affirmed.